# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARY F. BACHICHA,**

    **Plaintiff,**

vs.                                                    No. Civ. 99-228 M/RLP

**KENNETH S. APFEL,**
**Commissioner of Social Security**
**Administration,**

    **Defendant.**

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

1. This matter comes before the Court on the Motion of Mary F. Bachicha ("Plaintiff") to Reverse the decision of the Commissioner of Social Security denying her application for Disability Income Benefits ("DIB"). Plaintiff seeks an Order remanding this matter to the Commissioner with directions to award benefits, or in the alternative, an Order remanding with instructions to conduct additional proceedings.

**I.**     **Standard of Review**

2. The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed,[2] and (2) if the decision is supported by substantial evidence.[3] **See 42**

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to **28 U.S.C. §636(b)(1)**, file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] The Commissioner's decision will be reversed when he uses the wrong legal standards or fails to clearly demonstrate reliance on the correct legal standards. **Glass v. Shalala**, 43 F.3d 1392, 1395 (10th Cir. 1994).

[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Castellano v. Secretary of H.H.S.**, 26 F.3d 1027, 1028 (10th Cir. 1994). "The finding of the (Commissioner) as to any fact, if supported by substantial evidence, shall be conclusive." **42 U.S.C. §405(g)**. Substantial evidence is more than a scintilla but less than a preponderance. **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Evidence is not substantial if it is overwhelmed by other evidence of record. **Williams v. Bowen**, 844 F.2d 748, 750 (10th Cir. 1988). In determining whether substantial evidence exists, the

**U.S.C. § 405(b)**; **Bernal v. Bowen**, 851 F.2d 297, 299 (10th Cir. 1988); **Williams v. Bowen**, 844 F.2d 748, 750 (10th Cir. 1988). In this review, this court must "meticulously examine the record and review it in its entirety." **Id**.

## II. Administrative History

3. Plaintiff applied for DIB on July 12, 1995, alleging a date of onset of disability of June 12, 1995. (Tr. 26). Her claim was denied initially and on reconsideration. (Tr.37-41; 52-55). Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 14, 1996. (Tr. 184-217). In a decision dated July 1, 1997, the ALJ found that Plaintiff was not disabled, and could perform her past relevant work as a technical clerk, as well as a wide range of sedentary work available in significant numbers in the local and national economy. (Tr. 11-23). Plaintiff sought review by the Appeals Council, providing it with legal authorities and letters written by family and acquaintances. (Tr.173-179). The Appeals Council declined to review Plaintiff's claim on January 22, 1999. (Tr. 4-5).

## III. Vocational Facts

4. Plaintiff was born on June 12, 1941. (Tr. 26). She is a high school graduate who was previously employed in a variety of jobs for a communications company (technical clerk, special services assistant, service observer and directory assistance operator). (Tr. 72). Plaintiff's prior jobs were sedentary in exertional demands. (Tr. 63, 74).

---

Court does not review the issues *de novo*, **Sisco v. Dept. of H.H.S.**, 10 F.3d 739, 741 (10th Cir. 1993), reweigh the evidence or substitute its judgment for that of the Commissioner. **Glass v. Shalala**, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court's review will, however, involve a meticulous examination of the entire record. **Williams**, 844 F.2d at 750.

**IV.    Medical Facts**

5.   Plaintiff has been an insulin dependent diabetic since 1977 (Tr. 88, 208), and has required medication to treat hypertension since 1985. (Tr. 88). Her blood sugar levels are poorly controlled. (Tr. 95, 99, 117, 122, 124-125, 130). Her diabetes has produced significant peripheral neuropathy (Tr. 162) and diabetic retinopathy (Tr. 130). She also developed bone spurs in her heels which prevented her from placing weight on her heels. The combination of the bone spurs and neuropathy of her feet make walking or standing for prolonged periods difficult. (Tr. 91).

**A.    Neuropathy**

6.   Plaintiff was enrolled in a drug investigation study in 1992 and 1993, which monitored her symptoms of peripheral neuropathy. As of the end of the study, she had no neuropathy related arm or hand symptoms. (Tr. 156, 162). The progression of Plaintiff's neuropathy, as reflected in the records from her treating physicians, is as follows:

   a.   July 1, 1993: Peripheral neuropathy producing significant pain in Plaintiff's feet and legs. Neuropathy clinically documented through diagnostic studies confirming decreased reflexes, decreased vibratory sensation in both feet, decreased nerve conduction most significant in the lower extremities, with right side more affected than left, and deterioration in autonomic nervous system. (Tr. 162).

   b.   June 30, 1994: Aching discomfort in her legs and burning pain in her right great toe. Condition helped by use of Tylenol, and subsequently improved significantly with Desipramine. (Tr. 115, 113).

   c.   September 14, 1994: Symptoms worsening, occurring primarily with walking for any period of time. (Tr. 131).

   d.   October 13, 1994: Continued leg pain. Mild numbness of feet. Desipramine no longer effective. (Tr. 129).

   e.   January 20, 1995: Continued leg pain, increased by walking and decreased by rest. (Tr. 105).

   f.   February 19, 1995: Leg pain caused by walking 1-2 blocks. Mild pain present in the

evening and in bed. Minimal numbness of the feet. (Tr. 122).

 g. April 3, 1995: Persistent leg pain which increases with walking. (Tr. 100).

 h. July 3, 1995: Walking one mile per day. (Tr. 94).

 i. November 21, 1995: Continuing leg pain with walking. (Tr. 117).

7. On September 26, 1995, Plaintiff complained tingling in her hands during her consultative examination. (Tr. 88). No abnormality of her hands was noted at that exam, however, and no complaint regarding her hands is noted in the treatment records of any treating physician. Similarly, no treatment record mentions any problems Plaintiff had with sitting. She was observed sitting comfortably at the time of her consultative examination in September 1995. (Tr. 90).

8. Dr. Edwards, Plaintiff's treating endocrinologist, filled out a functional assessment questionnaire at the request of Plaintiff's attorney. (Tr. 132-134). In that form, he stated that Plaintiff was not capable of sitting up to six hours in a normal work day, standing or walking up to two hours in a normal work day, lifting as much as ten pounds frequently, nor did she have adequate dexterity to perform repetitive finger movements for 6 hours in an eight hour day. Conversely, the form states that she is capable of handling objects and using her hands and arms for repetitive activity. He ascribed no functional limitation arising from the control, or lack thereof, of Plaintiff's diabetes. Rather, he stated that Plaintiff's work related limitations were caused by peripheral neuropathy with pain and limited ambulation, and leg pain with ambulation. Dr. Edwards declined to further explain his opinion stating:

> You asked many questions and details regarding her physical disabilities. I am unable to answer your detailed questions. They require the expertise of a physician that deals with disabilities on a regular basis. I would recommend that she have an evaluation by such specialized physician if these answers are needed. (Tr. 135-136).

4

9.      After the administrative hearing, the Administrative Law Judge arranged for an evaluation by Dr. Reeve, Medical Director of Industrial Rehabilitation Clinics. (Tr. 164-167). Based on a review of medical records and physical examination, Dr. Reeve concluded that Plaintiff's hypertension, severe diabetes and significant findings consistent with diabetic neuropathy did not currently disable her from performing her prior job, which was sedentary in nature, but that he anticipated that she would become disabled at some future date.

**B.     Poorly Controlled Blood Sugar Levels**

10.     Plaintiff experiences symptoms related to hypoglycemia [4] due to poor control of her blood sugar levels.[5] She has stated to her physicians that these symptoms occur occasionally (Tr. 113), rarely (Tr. 129), and daily - lasting a couple of minutes. (Tr. 124-125).

**C.     Diabetic Retinopathy/Cataracts**

11.     Plaintiff has diabetic retinopathy and a cataract in her right eye. (Tr. 91, 130). A vision test performed on September 26, 1995, indicated that her visual acuity was quite good despite her cataract. (Tr. 90-91). As of March 18, 1997, her visual fields had decreased, with functional blindness resulting in disability anticipated to result at some future date. (Tr. 166-167). Plaintiff has a valid driver's license with no restrictions other than the requirement that she wear her glasses. (Tr. 195).

**V.     Plaintiff's Testimony and Post-Decision Evidence.**

12.     In written reports describing the nature of her disability, Plaintiff has stated:

---

[4] Symptoms can include intermittent dizziness, lightheadedness, shaking or tremor, headache and weakness. (Tr. 106, 122, 124-125).

[5] Although Plaintiff's blood glucose levels are consistently high when checked, her symptoms are those of hypoglycemia, or low blood sugar levels. (See. e.g., Tr. 105).

5

a. "I have trouble walking and standing for any length of time. My calves feel as if they are burning, swollen and are very painful." (Tr. 58).

b. "I have had a very hard time walking and getting to and from work." (Tr. 58).

c. Pain caused by "walking for any length of time. My legs hurt so badly I cannot walk. They feels as if they are swollen, are burning and are very painful. (caused by diabetic neuropathy). (Tr. 66).

d. Fatigue caused by "walking, standing for any length of time, any heavy physical activity." (Tr. 67).

e. My symptoms have changed since I filed my claim, I have "more pain - less ability to walk or stand for any length of time. Very limited mobility, unable to stand for any length of time. My emotional state has also been affected." (Tr. 78).

f. "My legs are more sensitive to pain" since November 30, 1995. (Tr. 84).

13. At the time of her administrative hearing, Plaintiff complained of pain and trouble walking and standing due to diabetic neuropathy in her legs (Tr. 193), similar problems developing in her hands[6] (Tr. 194, 202), poor vision (Tr. 189, 194, 206), frequent insulin reactions causing shakiness and disorientation (Tr.194), lack of strength and energy (Tr. 205), memory problems (Tr. 207), heel spurs which acted up if she didn't exercise daily (Tr. 207), and sleep disturbance caused by leg pain. (Tr. 207-208).

14. Plaintiff testified that she does most of her housework and meal preparation, needs no help bathing or dressing, and exercises daily to control heel spur pain. (Tr. 200-202, 207). She drives a car, though infrequently(Tr. 196), attends church, visits a friend weekly, and attends theatrical events three-four times a year. (Tr. 196, 198). She reads and watches TV daily. (Tr. 199, 201). Her

---

[6]Plaintiff testified that her hand problems were present when she last worked in 1995, stating that holding a pencil was painful, preventing her from writing more than 10-15 minutes at a time. (Tr. 206). She also stated that she had been developing carpal tunnel syndrome, perhaps due to keyboard use. (Tr. 207). As previously indicated, none of Plaintiff's treating physicians noted these complaint.

hobbies include reading, crocheting, water color painting and working with clay. (Tr. 90). She stated that she can walk one mile slowly, can be on her feet moving around for 30 minutes, can sit for one hour before getting up, and lift ten - fifteen pounds. (Tr. 203- 204).

15. Evangeline Mares, a friend for the past 15 years, submitted a letter to the Appeals Council stating that she had daily contact with Plaintiff, who frequently complained of not feeling well, being unable to walk because of leg pain, frequent eye infections and eye strain. She also stated that Plaintiff sometimes became disoriented. Teresa Garcia, a former co-worker, submitted a letter to the Appeals Council describing problems Plaintiff had in the workplace.[7]

**VI.    Issues and Analysis**

    A.    <u>The ALJ Correctly Determined That Plaintiff Had Not Established Disability at Step Three of the Sequential Evaluation Process</u>.

16. Listed impairments, which are considered at step three of the sequential evaluation process, are those "considered severe enough to prevent a person from doing any gainful activity." **20 C.F.R §404.1525(a)**. Specific medical findings are required in order to establish the existence of a listed impairment. **20 C.F.R. §404.1525(c)**. A claimant's description of his or her impairments do not establish a disability under the Listings. **20 C.F.R. § 404.1528(a)**. The Plaintiff bears the burden of presenting medical evidence sufficient to establish that he or she is disabled at step three. **Musgrave v. Sullivan**, 966 F.2d 1371, 1376 (10th Cir. 1992).

17. Plaintiff contends that she meets or exceeds Listing §9.08(A). The criteria for disability under this listing are:

---

[7] Ms. Garcia stated that Plaintiff had used a special computer screen at work because of cataracts.. She also stated that Plaintiff had bad circulation in her legs, and that towards the end of her employment it had become increasingly hard for Plaintiff to sit for long periods.

> *Diabetes mellitus.* with
> Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station. (See 11.00C).

Listing §11.00C provides:

> *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

18. The evidence clearly shows that Plaintiff suffers from diabetes mellitus with peripheral neuropathy. There was no evidence presenting indicating that she suffers from paresis, paralysis, tremor, involuntary movements or ataxia. Therefore, her claim that the ALJ erroneously decided her claim at step three rests on the contention that the medical record establishes sensory disturbance of sufficient severity, affecting two extremities, resulting in the sustained disturbance of gross and dextrous movements (upper extremities) or gait and station (lower extremities).

19. In **Clifton v. Chater**, 79 F.3d 1007, 1009 (10th Cir. 1996), the Tenth Circuit reversed the denial of benefits at step three of the sequential evaluation process, because the ALJ had failed to discuss the evidence or his reasons for determining that the claimant was not disabled. The Court held that pursuant to **42 U.S.C. §405(b)(1)**, the ALJ was required to discuss the evidence and explain why the appellant was not disabled at step three.

20. In this case, the ALJ reviewed medical evidence at length. He did not identify the listings he considered, nor is there a discreet portion of his decision wherein he sets out an explanation for determining that Plaintiff was not disabled at step three. It is clear, however, that the ALJ was advised that Plaintiff claimed disability under §9.08(A). (Tr. 214). Within the body of his decision

the ALJ cited to medical evidence relating to Plaintiff's ability to walk[8] and adopted the findings of Dr. Reeve which were relevant to Plaintiff's upper and lower extremity functioning.[9] The ALJ's discussion of medical evidence adequately articulates his examination of the evidence and his reasoning. Further, my review of the record reveals substantial evidence to support the ALJ's conclusion that Plaintiff's impairments do not meet or equal Listing §9.08(A).[10]

> B. The ALJ Properly Credited the Opinion of Dr. Reeve over That of Dr. Edwards of the Issue of Plaintiff's Functional Abilities.

21. The law in this Circuit regarding the deference given the testimony of a treating physician is clear:

> We have previously established that the (Commissioner) must give substantial weight to the testimony of the claimant's treating physician, unless good cause is shown to the contrary. **Frey v. Bowen**, 816 F.2d 508, 513 (10th Cir. 1987). However, a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence. **Id**.

**Bernal v. Bowen**, 851 F.2d 297, 301 (10th Cir. 1988).

Dr. Edwards was Plaintiff's treating physician. However, his functional assessment suffers from all the referenced inadequacies. It is brief, conclusory, and unsupported by any medical evidence relative

---

[8]The ALJ referred to Dr. Hamilton's observation that Plaintiff was unable to walk for prolonged periods of time (Tr. 11), Dr. Dillon's opinion that Plaintiff had the ability to walk for six of eight hours in a day (Tr. 15), and medical testing demonstrating decreased sensation in Plaintiff's legs (Tr. 11, 18). He referred to Dr. Edwards' opinion concerning Plaintiff's inability to walk as much as two hours in an eight hour day, which was "amended" by the doctor's recommendation that Plaintiff be referred to a physician who dealt regularly with disabilities in order to determine her functional abilities. (Tr. 12). He also "adopted" the findings of Dr. Reeve, a specialist in disabilities. (Tr. 14).

[9]Dr. Reeve's physical examination identified no limitation relative to Plaintiff's upper extremities. (Tr. 166).

[10]For example, Plaintiff was able to walk two miles daily as of October and November 1994, and one mile daily in 1995(Tr.108-109, 94), and demonstrated no difficulty walking at her consultative examination in 1997. (Tr. 166).

9

to Plaintiff's dexterity and ability to sit. The ALJ specifically noted that Dr. Edwards recommended that Plaintiff be evaluated by a physician who dealt with disabilities of a regular basis in order to determine her functional abilities, and evaluation which was conducted by Dr. Reeve. (Tr. 14). Accordingly, the ALJ did not err by adopting the findings of Dr. Reeve, which were supported by a recorded physical examination.

### C. There Was Substantial Evidence That Plaintiff's Vision and Dexterity Problems Were Not Disabling.

22. Plaintiff contends that her testimony and the letters submitted by her friend and co-worker establish that the ALJ and/or the Appeals Council improperly disregarded the severity of her vision and dexterity problems. The fact that Plaintiff may have vision and dexterity problems does not automatically mean that she is disabled. **Bernal v. Bowen**, 851 F.2d at 300. The evidence provided by Plaintiff's friend and co-worker does not overcome the substantial evidence of record indicating that Plaintiff's visual and dexterity problems were not disabling. (Tr. 91, 166-167).

### D. The ALJ Did Not Err by Deciding this Matter Without Conducting a Supplemental Hearing.

23. Plaintiff was evaluated by Dr. Reeve after the administrative hearing. A copy of Dr. Reeve's report was sent to Plaintiff's attorney, along with a letter advising of actions Plaintiff could take. (Tr. 168-169). These actions included submitting additional medical evidence and requesting a supplemental hearing. The letter clearly indicated that a supplemental hearing was not guaranteed. Plaintiff's attorney submitted a written criticism of Dr. Reeve's findings to the ALJ. He also requested a supplemental hearing in order to receive "testimony from a medical expert" and from Plaintiff's son, if the ALJ did not feel the claim could be resolved in Plaintiff's favor. (Tr. 170-172). Following the ALJ's adverse ruling, the Plaintiff submitted a letter from her son to the Appeals

Council, but did not submit any additional medical evidence.

24. Plaintiff had the opportunity to submit additional medical evidence contrary to that presented in Dr. Reeve's report, and did not do so. Under these circumstances, I find the ALJ did not commit error by his decision without conducting a supplemental hearing.

    E.    <u>The ALJ Properly Evaluated Plaintiff's Complaints of Pain.</u>

25. In evaluating Plaintiff's non-exertional impairments, including pain, the ALJ cited to case law from both the Fifth and Tenth Circuits. Plaintiff contends that the ALJ failed to apply correct legal principles to the extent he referred to and relied upon law from the Fifth Circuit. Specifically, Plaintiff contends that the ALJ erred in relying on a standard requiring pain to be "constant, unremitting and wholly unresponsive to therapeutic treatment" in order to be disabling. See, e.g., **Wren v. Sullivan**, 925 F.2d 123, 128 (5th Cir. 1991), **Harrell v. Bowen,** 862 F.2d 741, 480 (5th Cir. 1988). In the Tenth Circuit, a finding of disability based on complaints of pain "requires more than mere inability to work without pain.... [The] pain must be so severe ... as to preclude any substantial gainful employment." **Brown v. Bowen**, 801 F.2d 361, 362-363 (10th Cir. 1986), **quoting Dumas v. Schweiker**, 712 F.2d 1545, 1552 (2d Cir.1983).

26. The ALJ considered numerous factors specifically contemplated by Tenth Circuit law in assessing the disabling nature of Plaintiff's pain. Although the ALJ did not discuss Plaintiff's use of analgesic medication, or its effectiveness[11], he accepted that Plaintiff had pain on a daily basis, found that this pain was of short duration and moderate intensity, and that it was precipitated by lifting light to heavy weights or prolonged standing or walking. (Tr. 18). There is substantial evidence to support these findings. (Tr. 131, 129, 108-109, 105, 122, 100, 94-97, 89, 91). He found that

---

[11]At the time of her hearing, she was taking two medications for relief of leg pain. (Tr. 158).

despite her pain, Plaintiff was able to engage independently and appropriately in a variety of activities. There is substantial evidence to support this finding. (Tr. 89-91, 196, 200-202, 164).

27. It would have been preferable for the ALJ to refer exclusively to Tenth Circuit precedent in discussing his pain evaluation. I find, however, that the evidence relied upon by the ALJ demonstrates that under criteria applicable to the Tenth Circuit, Plaintiff's pain could properly be found to be non-disabling.

> F. Substantial Evidence Supports the ALJ's Determination that Plaintiff Retained the Residual Functional Capacity for Her Prior Work.

28. The requirements for making a determination at step four of the sequential evaluation process are explained in **Winfrey v. Chater**, 92 F.3d 1017, 1023 (10th Cir. 1996):

> (Step four of the sequential evaluation process) . . . is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), see SSR 86-8. Soc. Sec. Rep. Serv., Ruling 1983-1991, 423, 427 (West 1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. **20 C.F.R. §404.1520(e)**. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. See SSR 82-62. Soc. Sec. Rep. Serv., Rulings 1975-1982, 809; **Henrie v. United States Dep't of Health & Human Servs.**, 13 F.3d 359, 361 (10th Cir. 1993). At each stage of these phases, the ALJ must make specific findings. **See Henrie**, 13 F.3d at 361.

29. Plaintiff does not argue that the ALJ failed to follow the three step evaluation required by **Winfrey**. Rather, Plaintiff argues that the ALJ failed to give credence to specified physical limitations which would prevent her from being able to perform her past work.

30. Plaintiff previously worked as a technical clerk. It is undisputed that this work required exertion at the sedentary level. (Tr. 62-63, 74-77). **20 C.F.R. § 404.1567(a)**. Plaintiff also contends that this job required good vision, manual dexterity, and repetitive hand movements. (*Docket No. 11, p. 4-5*).

12

31.     The claimant has the burden of proof at step four of the sequential evaluation process. **Musgrave v. Sullivan**, 966 F.2d 1371, 1376 (10th Cir. 1992). As previously discussed, Plaintiff failed to present medical evidence that she had disabling vision problems, or disabling problems with manual dexterity or the repetitive use of her fingers.

32.     The record contained substantial evidence that Plaintiff retained the residual functional capacity her for prior sedentary work. Dr. Hamilton's examination constitutes substantial evidence that Plaintiff retains good visual acuity. Plaintiff had no symptoms related to her hands in 1993. (Tr. 156). In 1995, Dr. Hamilton reported Plaintiff's complaint of numbness of her hands. On physical testing, he found that her hands had normal sensation. He determined that standing and walking for prolonged periods would be difficult, but ascribed no difficulties associated with use of her hands. (Tr. 88-92). Dr. Reeve evaluated Plaintiff's hands in the course of his physical examination, and found that her ability to grasp, write, make a fist and pinch were intact. (Tr. 166). Although Dr. Edwards stated that Plaintiff's ability to use her hands was impaired, that opinion was unsupported by any medical testing or reported examination. Indeed, no examination of or complaint concerning Plaintiff's hands was mentioned in any of Dr. Edwards' treatment notes. Plaintiff also relies on the report of the agency reviewing physician Dr. Dillon, who stated that Plaintiff had manipulative limitations due to reported tingling in her fingers. (Tr.31- 32). There is nothing in Dr. Dillon's report, however, to indicate that these limitations reduced Plaintiff's residual functional capacity, and indeed, Dr. Dillon concluded that Plaintiff was not disabled. (Tr. 37).

33.     The ALJ's decision can be sustained through step four of the sequential evaluation process. There is therefore also no need to address Plaintiff's assertions of error allegedly made by the ALJ during step five of the process.

## V. Recommended Disposition

34. For these reasons, I recommend that Plaintiff's Motion to Reverse, or in the alternative, to Remand be denied, and that the decision of the Commissioner, denying Plaintiff's Application for Disability Insurance Benefits be affirmed.

_____
**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**